ARMED SERVICES BOARD OF CONTRACT APPEALS

| | |
|---|---|
| Appeal of - | ) |
| | ) |
| CB Portable Toilet Rental and Services | )   ASBCA No. 63449 |
| | ) |
| Under Contract No. N00189-22-P-0368 | ) |

APPEARANCE FOR THE APPELLANT:    Mr. Chizoma B. Onyems
    President
    Auburn, CA

APPEARANCES FOR THE GOVERNMENT:    Craig D. Jensen, Esq.
    Navy Chief Trial Attorney
    James P. Winthrop, Esq.
    Autumn W. Hazy, Esq.
    James Vaiden, Esq.
    Trial Attorneys

OPINION BY ADMINISTRATIVE JUDGE MELNICK REGARDING QUANTUM

On August 16, 2023, the Board issued its entitlement ruling in this appeal briefed at appellant's request under Board Rule 11. *CB Portable Toilet Rental Svcs*, ASBCA No. 63449, 23-1 BCA ¶ 38,421. The matter arises from the termination for convenience of a contract for the delivery and maintenance of portable toilets and hand washing stations for use at Camp Lejeune, North Carolina. The entitlement decision is summarized as follows.

The government awarded the contract to CB Portable on May 27, 2022. It contained FAR 52.212-4, CONTRACT TERMS AND CONDITIONS— COMMERCIAL PRODUCTS AND COMMERCIAL SERVICES (NOV 2021). *Id.* at 186,711.

The contract contained five line items (CLINs) identifying five training sites. At each site two portable toilets and one hand washing station were to be located and serviced for scheduled weeks, beginning in June or July 2022, running into September with later dates contemplated. Generally, each week on a site was a contract "unit." All five CLINs specified $1,030 as the price of a unit. The five CLINs were subject to DFARS 252.232-7007, LIMITATION OF GOVERNMENT'S OBLIGATION (APR 2014), ("LOGO" clause), which limited the government's payment obligations to an allotted amount. Although the total price of the contract was $145,230, at the time of award, the five CLINs had only been allotted $29,870 in funding. *Id.*

Separately, the contract required two "perpetual" portable restrooms and one hand washing station to include maintenance and cleaning service twice a month at an unidentified site.  *Id.*  Though no price was given for this requirement, the Board concluded that $1,030 per week was also reasonable.  *Id.* at 186,715.

Finally, during performance, the parties agreed to a contract change permitting the government to order units for additional locations and times at the $1,030 price.  *Id.* at 186,712, 186,715.

On August 12, 2022, the government terminated the contract for convenience, effective August 19, 2022.  The government also added funding for the five CLINs that brought the total allotted to $32,960, which it paid to CB Portable.  CB Portable completed services and stopped operations as of August 19.  *Id.* at 186,713.

CB Portable's appeal sought additional compensation beyond the government's payment.  The government argued that CB Portable's recovery was strictly limited by the LOGO clause to the $32,960 it had allotted to the contract and already paid.  *Id.* at 186,715.  The Board recognized that under this commercial item contract's termination for convenience provision CB Portable should "'be paid a percentage of the contract price reflecting the percentage of the work performed . . . plus reasonable charges' that CB Portable 'can demonstrate . . . have resulted from the termination.'"  *Id.* at 186,714.  The Board noted the government's concession that CB Portable performed the five CLINs and perpetual requirement as scheduled until the effective date of the termination.  It held that the liability constraints of the LOGO clause applied only to the five CLINs but not to the perpetual requirement or the changed work.  Given that the contract price for CB Portable's performance of the five CLINs only exhausted $21,630 of the $32,960 allotted to them, CB Portable was entitled to the price of their performance.  Additionally, it found CB Portable was entitled to the contract price for its performance of the perpetual provision and for units provided in response to government orders stemming from the contract change.  *Id.* at 186,715-16.

Turning to the termination clause's provision for "reasonable charges" resulting from the termination, the Board observed this "broadly requires payment of charges that do not relate to work completed but fairly compensate" CB Portable, including profit on some components.  *Id.* at 186,716 (citing *SWR, Inc.*, ASBCA No. 56708, 15-1 BCA ¶ 35,832 at 175,223).  After flatly rejecting some of the categories of costs sought by CB Portable, the Board deferred for the quantum phase the determination of the total number of units provided and further consideration of fair compensation.  However, it noted that to the extent these charges supported contract performance, they were subsumed within the unit prices and are not separately recoverable.  Also, after accounting for the price of performance, only $11,330 remained allotted to the five CLINs.  The LOGO clause limited further compensation associated solely with

2

the CLINs to that amount. Charges pertaining to the perpetual provision and changed work were not so constrained. *Id.*

Having completed additional briefing under Board Rule 11, the parties now return for a quantum ruling.[1]

FINDINGS OF FACT

CB Portable performed the five CLINs and perpetual work through the effective date of termination. It has been paid for those tasks. *Id.* at 186,713-15.

The government concedes it requested and received from CB Portable additional services discussed in the entitlement decision resulting in CB Portable providing five more units beyond those specified in the contract, at $1,030 each, for a total of $5,150 (gov't br. at 13-15). *CB Portable*, 23-1 BCA ¶ 38,421 at 186,712. CB Portable has failed to prove the government ordered any other services.

CB Portable needed six physical units (each consisting of two portable toilets and one handwashing station) to perform the successive scheduled work for the five CLINs, and separate "perpetual" requirement. Only one more physical unit was necessary to perform the additional changed work because no more than one was ever scheduled for any particular date. *Id.* at 186,711-12. Hence the total number of physical units required to perform was seven. CB Portable had four units already located at Camp LeJeune before it commenced performance. Its evidence shows that it shipped a quantity of 48 to Camp Lejeune, at a cost of $16,997.86, though it is not clear whether that was units or individual pieces of equipment. If the latter, that would be 16 physical units. (App. supp. R4, tab 16; app. supp R4, ex. 14) Giving the benefit of the doubt to CB Portable that it shipped 16 physical units, that breaks down to approximately $1,062.37 per physical unit, as opposed to $354.12 per physical unit if it shipped 48. It has failed to establish why it shipped so much equipment. Given the totality of the circumstances, we hold it was reasonable to have 10 physical units available to address government contingencies and unforeseen events, meaning six needed to be shipped. At $1,062.37 per unit, that totals $6,374.22. However, that figure is likely too low given that shipping costs per unit can generally be expected to

---

[1] On July 5, 2024, CB Portable filed a cryptic notice that could be construed as withdrawing its appeal. After the Board issued an order seeking clarification, CB Portable responded on July 13, 2024, that it was not withdrawing its appeal. Accordingly, we take no action on the request. After the Board decided entitlement and after quantum briefing was completed, CB Portable filed a document on July 10, 2024, purporting to assert superior knowledge as a theory of recovery. We disregard that filing as an untimely attempt to reopen review of entitlement.

drop with volume. Accounting for the fact that we have reduced the number of physical units that had to be transported, we find a fair total shipping charge that CB Portable could have expected for the six units is $10,000.

DECISION

CB Portable now seeks $1,331,404.20 (app. br. at 1; *see* 23-1 BCA ¶ 38,421 at 186,713 (amended claim amount of $489,567.65), at 186,714, n.5 (seeking $1,500,000 in complaint). It is entitled to recover the $5,150 price for the changed work. It is also entitled to recover $10,000 in startup costs for shipping physical units to Camp Lejeune that it could not spread across the expected revenues of full performance. *Zahra Rose Constr.*, ASBCA No. 62732, 22-1 BCA ¶ 38,111 at 185,111 (noting that recoverable costs can include startup costs). However, it has not proven what happened to the equipment after termination, so we have no basis to award any amount associated with their final disposition.

In its brief, CB Portable organizes its discussion into categories identified as Schedules B through I. Schedules B, C, and F allegedly seek hourly rates for the work of various personnel, and fuel costs, for the period between May 30 and August 30, 2022. We are unable to identify support for these claims. We also note that most of the time for which these amounts are sought was during contract performance. As already ruled upon in the entitlement decision, those charges are subsumed within the price paid for the work. 23-1 BCA ¶ 38,421 at 186,716. Though it is possible that charges incurred at the beginning and end of this period included startup costs, or otherwise resulted from the termination, without evidence identifying that work and supporting the costs we cannot award anything.

CB Portable also claims the full amount of its employee costs under Section 3610 of the Coronavirus Aid, Relief, and Economic Security (CARES) Act, Pub. L. No. 116-136, § 3610, 134 Stat. 281, 414 (2020). Section 3610, as amended, permitted agencies to reimburse contractors for paid leave expenses incurred through September 30, 2021, arising from the COVID-19 pandemic. Pub. L. No. 117-2, § 4015, 135 Stat. 4, 80 (2021). In addition to the fact that CB Portable never relied upon this provision as a basis for entitlement, it has no applicability to a contract awarded in 2022. Additionally, CB Portable does not otherwise characterize these costs as paid leave.[2]

---

[2] CB Portable's Rule 11 quantum reply brief also contains a motion for summary judgment that appears to further seek relief under its CARES Act theory, apparently also adding that its entitlement is governed by California law. The government requests that we strike the motion, which we deny. We reject the motion for the reasons given above. Also, CB Portable has not established the applicability of California law to this contract.

4

Schedule D seeks labor overhead related to delays. Our entitlement decision rejected CB Portable's allegations of delay. 23-1 BCA ¶ 38,421 at 186,716.

As best we can determine, Schedule E seeks compensation for the alleged required disposal of equipment. Though such costs could result from the termination, we cannot find evidence supporting the allegations or for the amounts sought.

CB Portable's arguments supporting Schedule G are also unclear but appear to seek payment for the cost of waste removal, moving equipment, "cutting up" the toilets, removing hazardous material, and hazard pay. It also appears to suggest these costs are unabsorbed indirect costs associated with contract suspension. The cost of removing waste and hazardous materials during performance is part of the contract's servicing requirement and subsumed within the price. It is plausible that some of these activities, such as moving equipment and cutting up the toilets, could reflect termination costs, but there is no evidence supporting the incurrence of these charges. Nor is there evidence the government suspended performance prior to terminating the contract for convenience (nor did we find it did in our entitlement decision) and it is not clear how these types of costs would be awardable if it had imposed a suspension.

Schedule H seeks a bonus for CB Portable's owner exceeding $274,000, flat payments for three offices located in California and Arizona, liability and vehicle insurance, workers compensation, utilities, maintenance, and travel and food. CB Portable has not demonstrated that it incurred most of these costs or how they constitute settlement expenses or charges resulting from the termination.

CB Portable says Schedule I seeks 10 percent profit. As we observed in the entitlement decision, the Board has allowed certain profits on the reasonable charges that have resulted from a termination for convenience under FAR 52.212-4(l). 23-1 BCA ¶ 38,421 at 186,716. We find that rate reasonable and apply it to the $10,000 in charges we have recognized were incurred for shipping the physical units.

CONCLUSION

CB Portable is entitled to recover $5,150 as the price for the additional change work ordered by the government.  It is entitled to recover $10,000 in charges to ship units to Camp Lejeune, plus ten percent profit on that amount.  Because $11,330 of funds allotted to the five CLINs remains unexpended, the LOGO clause does not require any reduction in the awarded charges.  Accordingly, CB Portable is entitled to $16,150, plus CDA interest accruing from August 19, 2022.

Dated:  August 26, 2024

MARK A. MELNICK
Administrative Judge
Armed Services Board
of Contract Appeals

I concur

OWEN C. WILSON
Administrative Judge
Acting Chairman
Armed Services Board
of Contract Appeals

I concur

MICHAEL N. O'CONNELL
Administrative Judge
Vice Chairman
Armed Services Board
of Contract Appeals

I certify that the foregoing is a true copy of the Opinion and Decision of the Armed Services Board of Contract Appeals in ASBCA No. 63449, Appeal of CB Portable Toilet Rental and Services, rendered in conformance with the Board's Charter.

Dated:  August 27, 2024

PAULLA K. GATES-LEWIS
Recorder, Armed Services
Board of Contract Appeals